[No. 3614–II.   Division Two.   January 17, 1980.]

ELIZABETH A. MAXWELL, *Appellant,* v. THE DEPART-
MENT OF LABOR AND INDUSTRIES, ET AL,
*Respondents.*

*Gary W. Rentel,* for appellant.

*Richard A. Jessup,* for respondents.

REED, C.J.—Elizabeth Maxwell received a partial disability award from the Department of Labor and Industries (Department). The award was affirmed by the Board of Industrial Insurance Appeals (Board). Thereafter Maxwell appealed to the Superior Court where she received an increase in the percentage of disability. Maxwell appeals from the Superior Court's refusal to assess her attorney and expert witness fees against her self–insured employer, St. Regis Paper Company (St. Regis). We affirm.

The sole issue on appeal concerns the interpretation of RCW 51.52.130, which reads as follows:

Attorney and witness fees in court appeal. If, on appeal to the court from the decision and order of the board, said decision and order is reversed or modified and additional relief is granted to a worker or beneficiary, or in cases where a party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained by the court, a reasonable fee

for the services of the worker's or beneficiary's attorney shall be fixed by the court. In fixing the fee the court shall take into consideration the fee or fees, if any, fixed by the director and the board for such attorney's services before the department and the board. If the court finds that the fee fixed by the director or by the board is inadequate for services performed before the department or board, or if the director or the board has fixed no fee for such services, then the court shall fix a fee for the attorney's services before the department, or the board, as the case may be, in addition to the fee fixed for the services in the court. *If the decision and order of the board is reversed or modified and if the accident fund is affected by the litigation* then the attorney's fee fixed by the court for services before the court only, and the fees of medical and other witnesses and the costs shall be payable out of the administrative fund of the department.

(Italics ours.) Maxwell concedes that the statute does not explicitly provide for charging any employer, whether self–insured or state–insured, with payment of an injured worker's fees. Her primary contention is that, because self–insured employers may be required to deposit cash or securities with the Department to guarantee payment of worker benefits and administrative assessments, RCW 51.14.020(2), this "escrow account" is analogous to the "accident fund," and is affected by her increased award, thus entitling her to fees from her employer. We disagree.

In the first place, the "escrow account" is required only when the Department is not satisfied with the employer's ability to meet its financial responsibilities under the act. We are not told if St. Regis established such an account; it is conceivable the Department did not require it to do so. In the second place, it is clear from the statutory scheme that the "escrow account" is subject to invasion only when and if the self–insured employer defaults on an order to compensate an employee or fails to pay administrative assessments, RCW 51.14.060 and .070. The escrow account is not therefore analogous to the state accident fund, nor so long as St. Regis meets its own obli-

gations to Maxwell is the account "affected" by her successful litigation.

■ Maxwell argues that the items in question are "benefits" or "compensation" as those terms are used in the Industrial Insurance Act, thus requiring a liberal interpretation of the statute in favor of the worker. Again we disagree. Nowhere in the act are such items treated as benefits or compensation, which terms are practically synonymous and refer to monetary awards for such things as death, disability, medical treatment and vocational rehabilitation. Washington follows the common–law rule that each litigant pays the fees of his attorney and other costs in the absence of an agreement or statute to the contrary. *Borenstein v. Department of Labor & Indus.*, 49 Wn.2d 674, 306 P.2d 228 (1957); *State ex rel. Macri v. Bremerton*, 8 Wn.2d 93, 111 P.2d 612 (1941); *O'Brien v. Industrial Ins. Dep't*, 100 Wash. 674, 171 P. 1018 (1918); *see also* 3 A. Larson, *The Law of Workmen's Compensation* § 83.11 (1976). But for RCW 51.52.130 no worker would be entitled to an allowance except for technical court costs, RCW 4.84.

The courts consistently have given the statute a strict interpretation and the words "if the accident fund is affected" have been held to mean just what they say and no more, *i.e.*, there must be some direct dollars and cents impact upon the accident fund, *Borenstein v. Department of Labor & Indus., supra; Trapp v. Department of Labor & Indus.*, 48 Wn.2d 560, 295 P.2d 315 (1956); *Harbor Plywood Corp. v. Department of Labor & Indus.*, 48 Wn.2d 553, 295 P.2d 310 (1956); *Boeing Aircraft Co. v. Department of Labor & Indus.*, 26 Wn.2d 51, 173 P.2d 164 (1946).

As for the seeming unfairness of charging the Department with reasonable fees when the claimant is a state–covered employee, while making no such provision when the claimant's employer is self–insured, we can only repeat what has been said by our Supreme Court when dealing with RCW 51.52.130. In *Borenstein v. Department of Labor & Indus., supra,* the court refused to read the statute

as authorizing a recovery of attorney's fees from or payable by the Department for services rendered *before the Board* as opposed to those for services before the court, stating at pages 676–77:

> The legislature, however, has made no provision for the recovery of attorney's fees from or *payable by the department for services rendered before the board. Harbor Plywood Corp. v. Department of Labor & Industries,* 48 Wn. (2d) 553, 295 P. (2d) 310.
>
> If such fees are to be paid by the department, it is a matter of policy to be determined and directed by the legislature through the enactment of a statute clearly providing for the payment of such fees by the department of labor and industries.

And, in *Trapp v. Department of Labor & Indus., supra,* where the worker sought fees from the Department for successfully defending the Board's approval of his departmental award, the court states at page 562:

> However, there seems much merit in the argument made in this case that, when a workman or beneficiary has to have legal representation at the appeal board, superior court, or supreme court level in order to obtain the relief to which he is ultimately determined to be entitled, the award so secured should not be diminished by the payment of attorney's fees.
>
> . . .
>
> Why the employer in the *Harbor Plywood* case, *supra,* or the department in the present case, should not be required to pay the claimant a reasonable attorney's fee, is far from clear; however, the statute we are called upon to construe *is* clear. The arguments which have been advanced in behalf of the widow in the *Harbor Plywood* case and by Mr. Trapp in the present case must of necessity be directed to the legislature.

Maxwell's final contention is that the construction we have placed on this statute invidiously discriminates against her and is a violation of her rights to equal protection of the law. We do not reach the full merit of this argument because Maxwell does not cross the threshold sufficiently to enable her to advance it.

We first note that the Department elected not to participate in the proceedings in Superior Court, although it has been held to be a "necessary" party to an appeal to that court under RCW 51.52.110; *see Aloha Lumber Corp. v. Department of Labor & Indus.*, 77 Wn.2d 763, 466 P.2d 151 (1970). Presumably this decision was prompted by the Department's knowledge that St. Regis is self–insured and that, under the plain wording of RCW 51.52.130, the Department ran no risk of being charged with payment of either increased benefits or attorney fees if Maxwell prevailed in Superior Court. In any event, we do not have the benefit of the Department's views regarding the statute. In addition, Maxwell's constitutional argument was advanced for the first time when she asked the trial court to reconsider its refusal to charge her fees against St. Regis. No testimony was offered to lay a foundation for such a claim, which appears to have been a mere afterthought. In consequence, for the first time on appeal, we are asked to hold the statute unconstitutional because it facially discriminates against employees of self–insured employers. We refuse to do so.

As stated in *Washington State School Directors Ass'n v. Department of Labor & Indus.*, 82 Wn.2d 367, 376, 510 P.2d 818 (1973), quoting from *State v. Persinger*, 62 Wn.2d 362, 382 P.2d 497 (1963):

> It is recognized that classifications must be made and that in making them, dividing lines must be drawn some place. Thus, the question is not whether there is in fact some discrimination, but rather whether the discrimination is justified.
>
> Neither the equal protection clause nor the privileges and immunities clause requires perfection in legislative classification. Within the limits of the restrictive rules that have been enumerated, the legislature has a wide measure of discretion in designating classifications. A statutory enactment cannot be successfully attacked unless the discrimination or inequality produced by the particular classification is manifestly arbitrary, unreasonable, inequitable and unjust.

When a statutory classification is challenged, if any state of facts reasonably can be conceived that will sustain it, there is a presumption that such facts exist. The burden is upon the one who assails the classification of showing that it fails to rest upon any reasonable basis and is essentially arbitrary.

(Citations omitted.) *See Markham Advertising Co. v. State*, 73 Wn.2d 405, 439 P.2d 248 (1968); *Sparkman & McLean Co. v. Govan Inv. Trust*, 78 Wn.2d 584, 478 P.2d 232 (1970); and *Caughey v. Employment Security Dep't*, 81 Wn.2d 597, 503 P.2d 460 (1972).

*See also Deputy Sheriff's Ass'n v. Board of Comm'rs*, 92 Wn.2d 831, 601 P.2d 936 (1979); *Moran v. State*, 88 Wn.2d 867, 568 P.2d 758 (1977).

■ Because the matter was not developed in the trial court, we are handicapped by the lack of a sufficient record upon which to posit a "conceivable basis" for distinguishing between the two classes of workers. Without the aid of such a record we will not attempt to weave our way through the complexities of the entire workmen's compensation scheme—including the Department's regulations. On the contrary we will presume valid reasons exist for the disparate treatment because Maxwell has not affirmatively demonstrated that the apparent discrimination between the two classes of workers is manifestly arbitrary, unreasonable, inequitable or unjust. We are, after all, not dealing with a subject matter—attorney fees and witness fees—to which Maxwell has any constitutional, property or inherent common-law right. Thus cases such as *Hunter v. North Mason High School & School Dist. 403*, 85 Wn.2d 810, 539 P.2d 845 (1975), cited by Maxwell are inapposite.

■ Finally, we note that Maxwell does not claim she is entitled to have her fees charged against the Department's administrative fund. In *Johnson v. Tradewell Stores, Inc.*, 24 Wn. App. 53, 600 P.2d 583 (1979), Division One of this court held this was the intent of the legislature even where the employer *is self-insured and the accident fund is not* affected. We have doubts about the validity of that decision, however. The statute is plain and unambiguous. There

is no absurd or incongruous result if each word or phrase therein be given its ordinary meaning in the context of the Industrial Insurance Act. This being so, the courts may not resort to judicial construction in order to rectify what to them may appear to be an unfair and injudicious result. This cardinal principle is stated thusly in *In re Estate of Sherwood,* 122 Wash. 648, 211 P. 734 (1922), at pages 655–56:

> But the courts are loath to read into a statute something which the legislature has not expressly put therein. It is true, undoubtedly, that the first in importance of the rules of statutory construction is the rule which requires the courts to search out and give effect to the legislative intent, but the rule is not without its limitations. It does not mean that the courts are at liberty, in all instances, when searching for the legislative intent, to go beyond the literal wording of the statute, although the literal construction be harsh and may seem to work inequity when measured by those standards usually regarded as just and equitable. On the contrary, where the meaning of the language used is plain, and the language is in itself susceptible of a rational construction, the meaning of the statute must be found from the language of the act itself. It is only where the language is of doubtful meaning, or where an adherence to the strict letter of the statute would lead to absurd or incongruous results, or would make one part of the statute contradictory of another part, or where it is plain from the entire context and evident purpose of the statute that the language used on a particular matter did not express the legislative intent thereon, that the courts will depart from the literal wording.

*See also Anderson v. Seattle,* 78 Wn.2d 201, 471 P.2d 87 (1970); *King County v. Seattle,* 70 Wn.2d 988, 425 P.2d 887 (1967); *State v. Spino,* 61 Wn.2d 246, 377 P.2d 868 (1963).

We cannot conclude the legislature had self–insured employers in mind when it chose the verbiage of RCW 51.52.130. Washington's system of workmen's compensation was adopted with the enactment of chapter 74, Laws of 1911. Section 20 of that act reads in part as follows:

It shall be unlawful for any attorney engaged in any such appeal to charge or receive any fee therein in excess of a reasonable fee, to be fixed by the court in the case, and, if the decision of the department shall be reversed or modified, such fee and the fees of medical and other witnesses and the costs shall be payable out of the administration fund, *if the accident fund is affected by the litigation.*

(Italics ours.) The self–insurance concept did not appear until passage of chapter 289, Laws of 1971, 1st Ex. Sess. (RCW 51.14). Since 1911 the Industrial Insurance Act has undergone extensive amendment; yet the last sentence of RCW 51.52.130 remains virtually as that statute was originally enacted in 1911. In conclusion, there is no basis for charging the worker's attorney and witness fees against the Department s administrative fund.

Judgment affirmed.

PEARSON and SOULE, JJ., concur.

Reconsideration denied March 11, 1980.

Review granted by Supreme Court April 24, 1980.